# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

5TH AND MAIN CONDOMINIUM ASSOCIATION, INC.

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

)
)
)
)
)
)
)
)
)

Case No. 3:24-cv-00553

Judge Trauger

Magistrate Judge Holmes

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff 5th and Main Condominium Association, Inc.'s motion to compel (Docket No. 40), to which Defendant Great American Insurance Company of New York responded in opposition (Docket No. 44) and Plaintiff replied in support (Docket No. 45). For the reasons set forth below, Plaintiff's motion is **DENIED**.

## I.     BACKGROUND[1]

This litigation concerns insurance coverage for a condominium building that sustained wind damage following a tornado. At issue is whether the insurance policy requires the insurer to provide coverage for the replacement of only the aluminum panels on the insured's building that were damaged during the tornado, or for the replacement of all of the aluminum panels, even those that were not damaged.

Plaintiff 5th and Main Condominium Association, Inc. commenced this litigation on April 1, 2024 in the Chancery Court for Davidson County, Tennessee against Defendant Great American Insurance Company of New York, its insurer. (Docket No. 1-2.) On May 3, 2024, Defendant

---

[1] While the Court presumes familiarity with this case, a brief history is recited below to provide context to and explanation of the Court's ruling on the instant discovery dispute.

removed the lawsuit to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Docket No. 1.)

In its complaint (Docket No. 1-2), Plaintiff alleges as follows: Plaintiff entered into an insurance policy issued by Defendant with a policy period of February 25, 2020 to February 25, 2021. (*Id.* at ¶ 8.) The policy provided "coverage to the subject building for any direct physical loss or damage to any Covered Property caused or resulting from any Covered Cause of Loss." (*Id.* at ¶ 9.) On March 3, 2020, a tornado damaged the building's roof and exterior façade, including 562 panels of the Aluminum Composite Material panel system (the "ACM Panel System"). (*Id.* at ¶¶ 7, 13.) Plaintiff submitted a claim to Defendant for coverage as a result of the tornado damage and Defendant issued payment to Plaintiff in excess of $2,000,000.00. (*Id.* at ¶¶ 10, 12.) However, Defendant will only cover the costs to replace the 562 individual panels that were damaged and will not cover the costs to replace the entire ACM Panel System. (*Id.* at ¶ 28.) Replacement of the entire ACM Panel System is recommended by various experts and required under the language of the applicable insurance policy. (*Id.* at ¶¶ 29–44.)

Accordingly, Plaintiff asserts three claims against Defendants: (1) a declaratory judgment that Defendant must "provide coverage and payment under the Policy for miscellaneous damage to various components of the subject building totaling $332,719.01 and to provide coverage and payment for the full replacement cost of the entire ACM Panel System, estimated to be in excess of $5,000,000.00"; (2) breach of contract; and (3) statutory bad faith under Tenn. Code Ann. § 56-7-105. (*Id.* at ¶¶ 54–74.) Plaintiff asks the Court to issue a declaratory judgment in its favor and award it compensatory damages, extra-contractual damages for bad faith, punitive damages, interest, costs, attorneys' fees, prejudgment interest, and other relief. (*Id.* at 11–12.)

2

In Defendant's amended answer to the complaint, it largely denies Plaintiff's allegations and asserts several affirmative defenses. (Docket No. 36.)

The parties must complete discovery by September 30, 2026 and file dispositive motions by May 1, 2027. (Docket No. 38.) The trial is set for October 12, 2027. (Docket No. 39.)

On March 2, 2026, Plaintiff filed the instant motion to compel and an accompanying joint discovery dispute statement. (Docket Nos. 40, 40-1). On March 3, 2026, Judge Trauger referred the motion to compel to the undersigned for disposition. (Docket No. 41.) On March 5, 2026, the undersigned ordered the parties to meet and confer in person over their discovery dispute and to then file joint status report indicating whether and to what extent they resolved their discovery dispute. (Docket No. 42.) The parties complied with the Court's order and filed a report on April 20, 2026 indicating that counsel met in person but were not able to resolve the dispute. (Docket No. 43.) Accordingly, the parties completed briefing on the motion to compel, which is decided as set forth below.

## II.  APPLICABLE LAW

The scope and management of discovery are within the sound discretion of the trial court. *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) (trial court is afforded broad discretion to control and dictate the sequence of discovery); *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (district courts have broad discretion to manage the discovery process and control their dockets) (internal citations omitted)."[I]n deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and [her] order is overruled only if the district [judge] finds an abuse of discretion." *Spencer v. DTE Elec. Co.*, No. 15-11421, 2016 WL 8308942, at *2 (E.D. Mich. Mar. 11, 2016).

Generally, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[2] Rule 26 of the Federal Rules of Civil Procedure sanctions a broad search and the information sought by a party need not be admissible to be discoverable. *Id*. Further, the former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept of reasonably calculated to lead to the discovery of admissible evidence was replaced by the direct statement that information within the scope of relevancy "need not be admissible in evidence to be discoverable."

However, the scope of discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). It is also "well established that the scope of discovery is within the sound discretion of the trial court." *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)); *see also Crawford-El v. Britton,* 523 U.S. 574, 598–99 (1998) (trial court is afforded broad discretion to control and dictate the sequence of discovery); *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (district courts have broad discretion to manage the discovery process and control their dockets) (internal citations omitted); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2019 WL 5957004, *1 (M.D. Tenn. Oct. 29, 2019) (ultimately, the scope of discovery is within the broad discretion of the trial court) (internal citations omitted).[3] Nevertheless, Fed. R. Civ. P.

---

[2] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

[3] That sentiment has continued throughout revisions to Fed. R. Civ. P. 26 including the most recent ones. The Court also possesses inherent authority to manage litigation. As noted by the First Circuit, "as lawyers became more adept in utilizing the liberalized rules, the bench began to use its inherent powers to take a more active, hands-on approach to the management of pending

4

37 authorizes the filing of a motion to compel discovery when a party fails to "answer an interrogatory" or "produce documents" in response to requests under Fed. R. Civ. P. 33 and 34, among other failures. Fed. R. Civ. P. 37(a)(3)(B).

### III. DISCOVERY AT ISSUE

In its motion, Plaintiff asks the Court to compel Defendant to provide information in response to two discovery requests that concern exclusionary insurance policy language that is sometimes referred to as a "mismatch exclusion."

The first request at issue is Plaintiff's Interrogatory No. 1 from its second set of interrogatories, which requests the following:

> Please identify whether [Defendant] GAIC has ever drafted, created, approved, issued, implemented, circulated, or utilized any policy form, endorsement, exclusion, or other insurance contract language that contains wording identical or substantially similar to the following exclusionary language:
>
> > *"We will not pay to repair or replace undamaged material due to mismatch between undamaged material and new material used to repair or replace damaged material."*
>
> or
>
> > *"We do not cover the loss in value to any property due to mismatch between undamaged material and new material used to repair or replace damaged material."*
>
> If your answer is yes, please identify for each such form or endorsement:
>
> > (a)      The form number;
> > (b)      The title;
> > (c)      The date created or first used;
> > (d)      The date withdrawn or last used (if applicable);
> > (e)      Whether the form was filed with any state Department of Insurance (identify each state); and

---

litigation." *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1011 (1st Cir. 1988) (cleaned up). "The judiciary is free, within reason, to exercise this inherent judicial power in flexible pragmatic ways." *Id.* at 1011 n.2 (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F. 2d 908, 916 (1st Cir. 1988)) (cleaned up).

(f)     Whether the form was used in any policy issued to the Plaintiff or applicable to the subject property.

(Docket No. 40-1 at 26–27.) The second request at issue is Plaintiff's Request for Production No. 1 from its second set of requests for production, which is directly related to Interrogatory No. 1. This discovery request asks Plaintiff to produce "all documents, files, drafts, policies, endorsements, exclusions, internal memoranda, communications, filings, and other materials" that relate to any of the forms, endorsements, exclusions, etc. that were identified in response to Interrogatory No. 1. (*Id.* at 31.) Defendant responded to both requests by objecting on the bases of privilege and scope, as well as by stating that it did not issue any policy forms to Plaintiff that included the quoted language. (*Id.* at 26–27, 31–32.)

In its motion to compel, Plaintiff argues that it should be able to discover other policies that have been issued by Defendant that contain language excluding coverage for undamaged materials for the purposes of matching. (Docket No. 40 at 3.) It argues that its request seeks information that is both relevant and proportionate to the needs of the case. With respect to relevancy, Plaintiff states that it is "entitled to know whether [Defendant] provides such exclusionary language on other forms, endorsements, policies, etc." (*Id.* at 6.) It contends that these other policies are the sort of "extrinsic evidence" that courts often rely on to interpret ambiguous terms in contract. (*Id.*) Plaintiff also argues that other insurers have used mismatch exclusions to "expressly exclude coverage to undamaged material for the purpose of matching," so evidence of whether Defendant has these forms will assist the jury in determining Defendant's intent in drafting the policy it issued to Plaintiff. (*Id.* at 6–7.) As for proportionality, Plaintiff asserts that searching for and producing the requested policies would not be unduly burdensome, particularly given the amount of money at issue.

In response, Defendant argues that it should not be compelled to produce the requested information because it is not relevant and because its production would not be proportional to the needs of the case. (Docket No. 44 at 4–10.) Defendant contends that the only policy at issue in this litigation is the one that it issued to Plaintiff, which did not contain a mismatch exclusion. (Docket No. 44 at 3.) Further, Defendant points out that Plaintiff has not identified any ambiguity in the policy that would merit the discovery of extrinsic evidence. (*Id.* at 9–10.)

Defendant filed an affidavit from underwriting officer Katie Kazemi in support of its response to the motion. (Docket No. 44-2.) Ms. Kazemi states that she performed an electronic search of Defendant's policy forms database, which revealed no policies with identical or similar wording to the mismatch exclusions included by Plaintiff in its discovery requests. (*Id.* at ¶¶ 3–5.) She also states that "to complete a search inclusive of everything Plaintiff seeks in its Motion to Compel would be an extensive endeavor." (*Id.* at ¶ 6.)

In its reply, Plaintiff contends that discovery of information regarding the "mismatch exclusion" is relevant because, although the exclusion is not in the policy at issue, Defendant has essentially read the exclusion into the policy. (Docket No. 45 at 1.) It also argues that Ms. Kazemi's declaration shows that Defendant is capable of using search terms to locate any responsive documents in its database, and offers search term suggestions that would alleviate any potential undue burden.

The Court has reviewed Plaintiff's discovery requests and the parties' arguments and finds the requested discovery is not relevant. The Court agrees with Defendant that whether it has "ever drafted, created, approved, issued, implemented, circulated, or utilized any policy form, endorsement, exclusion, or other insurance contract language" is not an issue before the Court in

7

this litigation. Instead, the primary issue is whether Defendant is obligated to provide coverage for replacement of the entire ACM Panel System under the language of the policy issued to Plaintiff.

The Court finds persuasive the reasoning in both *Erie Ins. Co. v. Rauser*, No. 3:19-cv-00375-TRM-HBG, 2020 WL 13889466 (E.D. Tenn. Dec. 18, 2020), and *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580 (W.D. Tenn. Oct. 5, 2016). In *Erie*, the insured asked the insurer to "identify each ErieSecure Policy and builders' risk policy it issued since 2015 for a home under construction on the date of inception of coverage," 2020 WL 13889466, at *2, and in *First Horizon*, the insured asked the insurers to produce what the Court described as "information and documents concerning [the insurers'] treatment of other insurance claims," 2016 WL 5869580, at *4. Those courts held that information related to other insurance claims or policies was not relevant to interpreting the insurance policy at issue in the lawsuit:

> As the [insurers] maintain, the positions they took in other claims depended on the policy language and the facts of the particular case, which are necessarily different from the policies and facts of the instant case. Even if the [insurers] have in fact taken conflicting positions in the past regarding the same terms at issue in this case, it would not aid the court in interpreting the policy language at issue or in determining the Defendants' intent in the instant case. Any relevance would be remote and the discovery requested would amount to nothing more than a fishing expedition.

*First Horizon*, 2016 WL 5869580, at *7.

> In a similar vein [to *First Horizon*], the Court finds Plaintiff's unwritten business practices not relevant. In fact, Defendants acknowledge that the "central component" of their claims is "whether Plaintiff and the Third-Party Defendants issued an improper policy of insurance under the *circumstances of this case.*" . . . Thus, the Court finds other instances are not relevant.

*Erie*, 2020 WL 13889466, at *4.[4] Also, as the *First Horizon* court stated, discovery of information related other claims or policies is "irrelevant" to a bad faith claim for the same reason that it is irrelevant to contract interpretation. 2016 WL 5869580, at *7 ("Other bad faith claims 'involve circumstances unique to each' policyholder, such as different facts, different policies, and different applicable law.") (citing *Connecticut Indem. Co. v. Markman*, No. CIV. 93-799, 1993 WL 452104, at *9 (E.D. Pa. Oct. 28, 1993)).

Here, the Court finds that any policy form, endorsement, exclusion, or other insurance contract language containing a "mismatch exclusion" that Defendant has included in other policies for other insureds is not relevant to the key issue in this case, which is, as Plaintiff puts it, whether "the plain language of the Policy requires [Defendant] to replace damaged 'Covered Property' which includes the entire ACM Panel System as broadly defined under the Policy, not limited to those ACM Panels exhibiting signs of storm damage." (Docket No. 40 at 2.)

Further, even if this discovery sought was relevant, the Court finds that it is disproportional to the needs of the case. While the amount of Plaintiff's alleged damages is significant, the Court finds that this amount does not outweigh the burden that would be imposed on Defendant in responding to the requests. This is evidenced in Ms. Kazemi's declaration, which states that a

---

[4] The Court is not convinced by Plaintiff's attempt to distinguish *Erie* by arguing that Plaintiff has merely requested policy "forms" whereas the insurer in *Erie* requested the actual policy. (Docket No. 40 at 9–10.) In its discovery requests, Plaintiff asks Defendant to state "[w]hether the form was used in any policy issued to the Plaintiff or applicable to the subject property" and to produce any policies related to those forms. Accordingly, pursuant to the discovery requests themselves, Plaintiff has, indeed, requested the production of policies in addition to policy forms.

9

search of the information requested by Plaintiff "would need to be completed by several . . . employees over a span of multiple days and weeks." (Docket No. 44-2 at ¶ 6.) Although the Court has found document searches of this magnitude to be proportionate in other situations, the amount of time and cost that this particular search would take is disproportionate to the importance of the information in resolving the question of whether the subject policy requires Defendant to provide coverage to Plaintiff for the replacement of the entire panel system or only the damaged panels.

Therefore, under the circumstances of this particular case, allowing Plaintiff to discover information regarding "mismatch exclusions" from other policy forms, endorsements, exclusions, or other insurance contract language created by Defendant would result in a fishing expedition with little or no relevance to the Plaintiff's request for declaratory judgment or its breach of contract or bad faith claims. Further, allowing this discovery would be a significant and disproportionate burden to Defendant. Accordingly, Plaintiff's motion to compel is denied.

## IV.    PAYMENT OF EXPENSES

Both parties ask the Court to award them fees under Rule 37(a)(5) either for the grant or denial of the motion to compel. (Docket No. 40 at 10–12; Docket No. 44 at 10–11.) Under Rule 37(a)(5)(B), the Court must require Plaintiff, its attorney, or both to pay Defendant its reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was "substantially justified or other circumstances make an award of expenses unjust."

"Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Sixth Circuit has held that a party meets the "substantially justified" standard if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington–Fayette Urban Co. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce*, 487 U.S. at 552)). As noted by the

10

Supreme Court, "the one [connotation] most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 at 565.

Although the Court ultimately was not persuaded by Plaintiff's position, the Court finds that the position was nevertheless one that a "reasonable person" could have made under the applicable legal authority and one that was "justified in substance or in the main." *Doe*, 407 F.3d at 765; *Pierce*, 487 at 565. Accordingly, the Court finds that the motion to compel was "substantially justified" under Rule 37(a)(5)(B) such that the Court will not require Plaintiff or its attorneys to pay expenses related to the motion.

## V. CONCLUSION

For these reasons, Plaintiff 5th and Main Condominium Association, Inc.'s motion to compel (Docket No. 40) is **DENIED.**

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge